IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DENEILLE RICHIE THOMPSON | MAG No. 09-164 GGH |
| | ORDER OF CERTIFICATION |
| _____/ | |

*Introduction and Summary*

      The Republic of France seeks the extradition of Deneille Richie Thompson ("Thompson") for some rather dated economic crimes: (a) theft in violation of the French Penal Code, articles 311-1, 311-3, 311-13, 311-14; and (b) fraud in violation of the French Penal Code Articles 311-1, 313-3, 313-7, and 313-8.  For the reasons set forth herein, extradition on the theft charge is denied, but extradition on the fraud charge is certified to the Secretary of State.

*Background*

      In mid-1999, Thompson allegedly used his French girlfriend's credit card and PIN number in order to make purchases which were not authorized by the girlfriend.  A little over a year later, he allegedly, fraudulently used checks (from a defunct bank account located in Rhode Island), printed with another's name, which were cashed and deposited at a French bank in an amount in excess of $150,000.  The person whose name appeared on the check had closed out his

checking account sometime before, and Thompson had no authority to use the checks.  As part of the scheme, when the checks first failed to clear, Thompson gave a contact number for a person, supposedly in authority at the bank on which the checks were written, who "approved" the checks for payment.  Thompson was able to draw down, in part, on these supposed funds at the French bank.  Of course, the money "deposited" ultimately failed to materialize as there was no active Rhode Island bank checking account.

The French investigation of these economic crimes commenced in 2001, and proceeded slowly thereafter, complicated by the necessity to conduct investigation by letters rogatory in the United States, and also the fugitive status of Thompson.  Under French law, the statute of limitations is tolled during the pendency of official investigation.

A complaint seeking extradition was finally filed on May 20, 2009, and signed by the undersigned.  Apparently, the United States Attorney had information that Thompson was located within the Eastern District of California.  Thompson was arrested, initial appearances were made, counsel was appointed for Thompson, and he was ordered detained pending the extradition process in this district.  Documentary evidence was filed in June 2009, and a hearing on the evidence was held on June 22, 2009.  Thompson did not seek to present "explanatory" evidence relevant to the charges; however, he did contest the sufficiency of the evidence for extradition purposes.  Because Thompson filed a brief on the day of the hearing, the appearing AUSA was given ten days in which to file a reply brief.  That response was timely filed on July 1, 2009.

*Discussion*

Extradition proceedings are not Article III jurisprudential proceedings.  Rather, the proceedings derive from Article II of the Constitution, and have been interpreted by the Supreme Court as necessarily involving the courts.  See <u>In re Kaine</u>, 55 U.S. 103, 109, 14 L.Ed. 345 (1852); <u>Matter of Requested Extradition of Smyth</u>, 61 F.3d 711, 720 (9th Cir. 1995) ("[E]xtradition hearings [are] conducted under the authority of a treaty enacted pursuant to

Article II."). Title 18 U.S.C. § 3184 provides:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered.

Magistrate judges are designated to preside in extradition proceedings. E.D. Cal. L.R 72-302 (b)(8).

Ultimately, there are five issues which must be resolved before extradition is proper:

1) the extradition judge had jurisdiction to conduct proceedings;

(2) the extradition court had jurisdiction over the fugitive;

(3) the extradition treaty was in full force and effect;

(4) the crime fell within the terms of the treaty; and

(5) there was competent legal evidence to support a finding of extraditability.

Manta v. Chertoff, 518 F. 3d 1134, 1140 (9th Cir. 2008).

Thompson does not dispute that the first four criteria are satisfied. He challenges only the sufficiency and competency of the evidence.

The extradition treaty will generally set forth the standard of evidence which will warrant extradition. The treaty applicable here provides:

> [I]n the case of a request submitted by France, an original or duly authenticated copy of the warrant or order of arrest and such in formation as would justify the committal for trial of the person if the offense had been committed in the United States.

Extradition Treaty With France, Article 10 (See Propp Declaration at Docket #s 11, 12.)

Admissibility of documents requires only that the documents be certified by a resident United States consular agent in France, or otherwise authenticated under the laws of the United States. Article 11.

Thus, the undersigned will apply a standard similar to that of a preliminary hearing, determining whether the evidence justifies holding the accused for trial, not whether the evidence may justify a conviction. See Matter of Extradition of Powell, 4 F. Supp.2d 945 (S.D. Cal., 1998). The analysis is parallel to that used in determining whether evidence demonstrates probable cause to charge the crime.

The requesting country is not required to submit all its evidence, and the district court considers only probable cause, not whether the evidence is sufficient to convict. In re Singh, 170 F. Supp.2d 982, 993 (E.D. Cal. 2001) aff'd in part, rvs'd in part on other grounds Barapind v. Enomoto, 400 F. 3d 744 (9th Cir. 2005) (en banc). The district court determines only whether probable cause exists to believe the extraditee committed the charged crimes. Quinn v. Robinson, 783 F.2d 776, 782-83 (9th Cir. 1986). Another way of putting the matter is that extradition must be allowed if there is a reasonable belief that the extraditee committed the crime and competent evidence supports that belief. Mainero v. Gregg, 164 F.3d 1199, 1205 (9th Cir. 1999), superseded by statute on other grounds, Carnejo-Barreta v. Seifest, 218 F.3d 1004 (9th Cir. 2000).

The probable cause standard is flexible. The Supreme Court has acknowledged:

> Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standards are not readily, or even usefully, reduced to a neat set of legal rules.

Ornelas v. U.S., 517 U.S. 690, 695-96, 116 S. Ct. 1657, 1661 (1996) (quotations and citations omitted); see also U.S. v. Schaafsma, 318 F.3d 718, 722 (7th Cir. 2003) ("The determination of whether probable cause exists in a given situation involves examining the totality of the

4

circumstances in a common sense manner."); U.S. v. Hayes, 236 F.3d 891, 894 (7th Cir. 2001) ("The probable cause standard is a flexible, practical common-sense one which is met if the facts are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed."); U.S. v. Gilliam, 167 F.3d 628, 633 (D.C. Cir.1999) ("[A]rticulating when probable cause exists is a 'common sense' determination, which turns on the 'practical considerations of everyday life.'"). "[T]he extradition judge makes credibility determinations as to the competence of the evidence supporting probable cause." In re Singh, 170 F. Supp.2d at 1023.

International extradition proceedings are not governed by the Federal Rules of Evidence, the hearsay prohibitions, or the Sixth Amendment speedy trial guarantee. See Fed. R. Evid. 1101(d)(3); Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir.1986); 18 U.S.C. §3172(2), Jhirad v. Ferrandina, 536 F.2d 478, 485n.9 (2d Cir. 1976). Given the low standard of admissibility of evidence in the treaty, which essentially permits anything into evidence which has been authenticated, see Barapind v. Enomoto, 400 F. 3d at 748, the information submitted need not be submitted under oath, and to a point, even witness information summaries may be considered. Zanazanian v. United States, 729 F.2d 624, 627 (9th Cir. 1984). However, mere accusations are not evidence, Mon-Seok Choe v. Torres, 525 F.3d 733, 738 (9th Cir. 2008); thus, the witness summaries must be sufficiently detailed as to be more than mere factual or legal conclusions. Zanazanian, supra.

The evidence submitted in this case is not voluminous. It consists of a prosecutorial summary of the evidence, and an FBI report of investigation performed in the United States. For the first theft charge, the sum total of "evidence" submitted is:

> Between April 30, 1999 and June 3, 1999, [Thompson] made several purchases from travel agencies in Granville, through fraudulent use of the bank card number belonging to his girlfriend Pascale Valentin, who had given him the number for other purposes.
> When interviewed by the police, he admitted that he used his girlfriend's bank card number and secret PIN fraudulently for his

5

1         own profit, and he undertook to reimburse her, but did not actually
2         do so.

Report of the French Ministry of Justice, at pp.1-2, Barry Declaration at Docket #14.

      While one's confession is certainly sufficient for probable cause, the grossly generalized and conclusionary characterization of Thompson's interview is not competent evidence. While a copy of the transcript of the interview would have been preferred, a summary of the interview would have been sufficient had it been detailed with factual information, including quotes or near verbatim passages. Such is not the case here. Moreover, the first paragraph is nothing more than an accusation, the evidentiary source of which is completely unknown, or at least described. Insufficient, competent evidence exists to certify extradition under the treaty for the theft charge.

      The fraud charge contains many more details. The prosecutor recounted the deposit of specific, large checks in the French bank by Thompson. The checks were written on an account located in Rhode Island which at one time was an active account in the name of Stewart. The prosecutor described the precise amount of the checks and the amount of francs withdrawn. After the checks were initially returned, the prosecutor told of Thompson's request to reissue the checks, along with a "bank" verification contact in the United States which turned out to be sham, i.e., the contact worked in a printer's office, not a bank. The report also details factual information given by Thompson concerning his reasoning as to why he believed he had sufficient funds in the bank: that Stewart was his attorney who had embezzled a large sum of money from his mother. Apparently, Thompson was just seeking restitution when he wrote the checks. The evidence also includes the detailed report of investigation by the FBI (Barry Declaration at Docket # 13) which demonstrates that although Stewart knew Thompson, Stewart was never a lawyer, nor was there any evidence of a complaint by Thompson that an inheritance had been embezzled, nor that there had been any probate proceedings for Thompson's mother in the first place. Stewart had closed his checking account prior to the time Thompson wrote the

checks. The report also consisted of prior crimes and frauds to which Thompson had been connected, including fraudulent checks.

The undersigned accepts the prosecutor's observations about the checks and withdrawal themselves, as there is generally little need for a credibility analysis for such objective facts. These facts appear to set up a probable fraudulent check cashing scheme. Particularly telling from a probable cause standpoint are the facts used by Thompson for justification – facts which were completely found to be false and bespeak Thompson's consciousness of guilt and intent to defraud. This was not a case of innocent, mistaken, or negligent cashing of checks for which one might have had reason to believe were legitimate checks.

Thompson has not contested his identity as the person accused of this crime. The Court has reviewed the physical descriptions and photographs of the fugitive and finds that he is the same DENEILLE RICHIE THOMPSON accused of the crime of fraud. Based on this evidence, the undersigned would have no problem in holding Thompson over for trial based on probable cause to believe that Thompson had committed the charged crimes if these were charged crimes committed in the undersigned's jurisdiction. The undersigned finds that Thompson's identity has been established and that there is probable cause to believe he committed the fraud offense for which extradition is sought.

*Conclusion*

Based on the foregoing findings, the Court concludes that Thompson is not extraditable on the theft charge but is subject to extradition for the offense of fraud in violation of the aforementioned French Penal Code statutes, and certifies this finding to the Secretary of State as required under Title 18, United States Code, Section 3184.

IT IS THEREFORE ORDERED THAT a certified copy of this Certification of Extradition Order be delivered by the Clerk to Assistant United States Attorney, Russell L. Carlberg, for transmission to the Secretary of State;

1       AND IT IS FURTHER ORDERED THAT DENEILLE RICHIE THOMPSON be committed to the custody of the United States Marshal for this District pending final disposition of this matter by the Secretary of State and the arrival of agents of the requesting state, at which time the fugitive will be transferred to the agents of the requesting state for return to France.

      IT IS SO ORDERED.

DATED: 07/09/09

                                     /s/ Gregory G. Hollows

                                     UNITED STATES MAGISTRATE JUDGE

thompson.extr